UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DARCIE FETHER,

    Plaintiff,

v.

                            CASE NO. 8:24-cv-00331-SDM-NHA

GEICO INDEMNITY COMPANY,

    Defendant.

_____/

**ORDER**

Alleging breach of contract (Count I) and breach of the duty of good faith (Count II), Darcie Fether sues (Doc. 33) GEICO Indemnity Company. GEICO moves (Doc. 34) to dismiss, and Fether responds. (Doc. 43) Each party moves (Docs. 44 and 45) for summary judgment, and each party responds (Docs. 50 and 51).[1]

**BACKGROUND**

On May 1, 2018, David Heffron's driving privileges were revoked for driving under the influence. (Doc. 51 at 3). After his privileges were reinstated, David purchased from GEICO an automobile insurance policy providing liability coverage of $100,000 per person and $300,000 per occurrence for accidents occurring between September 10, 2021, and March 10, 2022. (Doc. 33-1 at 6). The GEICO policy

---

[1] Fether moves for summary judgment on Count I alone, and GEICO moves for summary judgment on Count I and Count II.

provides "Named Non-Owner Coverage" and lists no vehicle on the "Declarations Page." (Doc. 33-1 at 6 and 40). The policy covers bodily injury or property damage "arising out of the ownership, maintenance, or use of the ***owned auto*** or a ***non-owned auto***." (Doc. 33-1 at 11) (emphasis in the original). The GEICO policy defines the relevant terms as follows:

> ***Non-owned auto*** means a ***private passenger auto, farm auto*** or ***utility auto*** or ***trailer*** furnished for ***your*** use which is not owned by either ***you*** or a ***relative***. Such use must be:
> a) with the permission of the owner; or
> b) reasonably believed to be with the owner's express or implied permission
>
> ***Owned auto*** means a ***private passenger auto***, ***farm auto*** or ***utility auto, you*** acquire on the date ***you*** become the owner provided:
> a) ***you*** acquire the vehicle during the policy period; and
> b) ***you*** ask us to insure it within 30 days after ***you*** acquire ownership.
>
> . . .
>
> ***Relative*** means a person related to ***you*** by blood, marriage or adoption . . . who is usually a resident of the same household as you.

(Doc. 33-1 at 10 and 16) (emphasis in the original).

The policy also contains an endorsement (Endorsement UE4) stating, "This policy meets the requirements of Florida Statute § 627.7275(2) to reinstate a driver's license because of failure to maintain the required security." (Doc. 33-1 at 42). Section 627.7275(2) requires that such a policy "conform[] to the requirements of § 324.151," a provision within Florida's Financial Responsibility Law mandating coverage for "the liability of the named insured arising out of the use of a motor vehicle not owned by him or her."

At approximately 1:00 a.m. on October 20, 2021, David was driving his mother, Patricia Heffron's, 2013 Audi S5. Darcie Fether was a passenger. (Doc. 44 at 2; Doc. 44-1). David fell asleep at the wheel, lost control of the vehicle, struck construction pipes, and came to rest on the shoulder of the highway. (Doc. 44 at 2; Doc. 44-1). Fether sustained severe injuries and incurred medical expenses exceeding $400,000. (Doc. 45 at 4).

At the time of the accident, Patricia owned the Audi, which she insured through Allstate Fire & Casualty Insurance Company under a policy providing $100,000 per person and $300,000 per occurrence in bodily injury coverage. (Doc. 44 at 7; Doc. 44-5). David lived in Patricia's home. (Doc. 44 at 3).

On January 5, 2022 — 107 days after the accident — GEICO first received notice of the accident by a phone call from Fether's lawyer, who on Fether's behalf made a bodily injury claim. (Doc. 44 at 6). Following investigation, GEICO disclaimed coverage and asserted in a February 14, 2022 email to Fether's lawyer and in a February 14, 2022 letter to the Heffrons that the Audi was "not listed on this policy and does not meet the definition of either an 'owned auto,' including a 'temporary substitute auto,' or a 'non-owned auto,'" and that the Audi "appears to be insured with Allstate." (Doc. 44-15; Doc. 44-16; and Doc. 44-17).

On April 5, 2022, Fether offered to settle her bodily injury claims against the Heffrons for $200,000, the combined limits of the Allstate and GEICO policies. (Doc. 33-2). Allstate agreed to tender $100,000, but GEICO again denied coverage. (Doc. 33-3).

On May 31, 2022, and in state court, Fether sued the Heffrons for negligence. *Fether v. Heffron*, No. 2022-CA-001441 (Fla. 6th Cir. Ct. Pasco Cnty. May 31, 2022) (Doc. 44-3). Allstate defended the Heffrons. (Doc. 44 at 7; Doc. 44-4). On February 24, 2023, Fether, the Heffrons, and Allstate executed a settlement agreement stipulating a judgment of $5,000,000; Allstate paid $105,000 (including costs), and Fether agreed to release Allstate and Patricia. On March 6, 2023, the state court entered a final judgment for Fether and against David in the amount of $4,900,000. (Doc. 44-18).

On May 12, 2023, Fether offered to release the $4,900,000 judgment against David in exchange for GEICO's payment of the $100,000 bodily injury limit by June 12, 2023. GEICO declined by re-sending the earlier denial letter. (Doc. 33-11).

On April 9, 2024, David assigned to Fether all rights and causes of action against GEICO and arising from the October 20, 2021 accident. (Doc. 33-12). Fether sues GEICO for breach of contract and breach of the duty of good faith. (Doc. 33).

## DISCUSSION

To state a claim for breach of contract, a plaintiff must allege "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)). "To allege a material breach, Plaintiff must establish that the denied claim was covered by the Policy." *Harvest Moon Distributors, LLC v. Southern-Owners*, 493 F.Supp.3d 1179, 1183 (Byron, J.) (M.D. Fla. 2020). "[I]nsurance contracts are construed

- 4 -

according to their plain meaning." *Taurus Holdings, Inc. v. United States Fid. & Guar. Co.*, 913 So. 2d 528, 537 (Fla. 2005). But to the extent that an insurance policy conflicts with Florida's Financial Responsibility Law, any conflicting provision of the policy is invalid. *Angelotta v. Sec. Nat. Ins. Co.*, 117 So. 3d 1214, 1218 (Fla. Dist. Ct. App. 2013).

The GEICO policy covers liability for bodily injury or property damage arising from the "ownership, maintenance, or use of the ***owned auto*** or a ***non-owned auto***." (Doc. 33-1 at 11) (emphasis in the original). An "owned auto" is defined as a ***private passenger auto*** . . . ***you*** acquire on the date ***you*** become the owner." (Doc. 33-1 at 40) (emphasis in the original). Judged by the face of the policy, the Audi is not an "owned auto" because David never owned the Audi. (Doc. 44-1; Doc. 44-2; and Doc. 44-4 at ¶¶ 6 and 8). A "non-owned auto," which is defined as a "private passenger auto . . . furnished for ***your*** use which is not owned by either ***you*** or a ***relative***." (Doc. 33-1 at 40) (emphasis in the original). The Audi is not a "non-owned auto" because the Audi was owned by David's mother, Patricia, with whom David resided at the time of the accident.

However, Endorsement UE4 states that the policy "meets the requirements of Florida Statute § 627.7275(2) to reinstate a driver's license." Section 627.7275(2) incorporates Section 324.151(1)(b), which requires coverage for "the liability of the named insured arising out of the use of a motor vehicle not owned by him or her." Fla. Stat. §§ 627.7275(2)(a)(2) and 324.151(1)(b). As stated in *Angelotta*:

> "An insurance policy issued as proof of financial responsibility pursuant to [C]hapter 324 is required to insure the policy holder not only for liability for damages arising out of the ownership or use of the policyholder's covered vehicle(s), but also against loss from liability imposed by law for damages arising out of the use by the person of *any motor vehicle not owned by the policy holder*."

*Angelotta*, 117 So. 3d at 1218 (emphasis in original).

Because the GEICO policy's exclusion of a "family-owned auto" "conflict[s] with Florida's Financial Responsibility Law," the exclusion is "invalid." *Angelotta*, 117 So. 3d at 1218; *see also Allstate Indem. Co. v. Wise*, 818 So.2d 524, 527 (Fla. 2d DCA 2001) (finding that an "intentional act" exclusion in a policy issued under chapter 324 was unenforceable because the exclusion "contravene[s] the public policy behind the financial responsibility laws."); *Makris v. State Farm Mut. Auto. Ins. Co.*, 267 So.2d 105, 108–109 (Fla. 3d DCA 1972) (invalidating an employee exclusion in a policy issued under Chapter 324).

GEICO argues that the "family-owned auto" exclusion is valid under Chapter 324 because "[f]amily or household exclusions have been routinely upheld by Florida courts as lawful and consistent with public policy." *Motzenbecker v. State Farm Mut. Auto. Ins. Co.*, 123 So. 3d 600 (Fla. 2d DCA 2013). But each case GEICO cites upholds an exclusion barring recovery by an insured's family member; none involves an exclusion denying coverage to an unrelated accident victim. *See, e.g.*, *Reid v. State Farm Fire & Cas. Co.*, 352 So. 2d 1172, 1173 (Fla. 1977). GEICO improperly attempts to expand the meaning of "household exclusion" to include a distinct limitation based solely on vehicle ownership within the family rather than based on the relation between the insured and the injured party. In any event, the authority on which

- 6 -

GEICO relies recognizes that such an exclusion is valid only "in the absence of a statutory prohibition," and Chapter 324 constitutes precisely that statutory prohibition. *Reid*, 352 So. 2d at 1173.

The policy established by the Florida legislature appears in Section 324.011, Florida Statutes:

> It is the intent of this chapter to recognize the existing privilege to own or operate a motor vehicle on the public streets and highways of this state are used with due consideration for others and their property, and to promote safety and provide financial security requirements for such owners or operators whose responsibility it is to recompense others for injury to person or property caused the operation of a motor vehicle. Therefore, it is required herein that the operator of a motor vehicle involved in a crash or convicted of certain traffic offenses meeting the operative provisions of 324.051(2) shall respond for such damages and show proof of financial ability to respond for damages in future accidents as a requisite to his or her future exercise of such privileges.

Under the governing statute, financial responsibility is mandatory for every Florida licensee. An insurance policy conforming to Chapter 324 serves as financial protection for the public. *Wise*, 818 So. 2d at 526-27 ("[A]n insurance policy procured to comply with the Financial Responsibility Law is an insurance policy for the benefit of the public using the highways of this State.") (internal citations omitted); *Florida Bar, Florida Automobile Insurance Law* § 1.7, 8th Ed. (citing Blashfield, Automobile Law & Practice § 272.1) (the purpose of the financial responsibility laws is "(1) to protect the tortfeasor for financial disaster resulting from a judgment rendered against him or her in a court of law, and (2) to compensate the accident victims for their injuries").

The household exclusion caselaw on which GEICO relies is inapposite for another reason: the policy rationale underlying the household exclusion bears no resemblance to the animating purpose of Florida's Financial Responsibility Law. A household exclusion is designed to prevent collusive claims among family members residing in the same household. Blashfield, Automobile Law & Practice § 323:14, nn 2, 5 (citing *Meyer v. State Farm Mut. Auto. Ins. Co.*, 689 P.2d 585, 52 A.L.R.4th 1 (Colo. 1984); *Black v. Allstate Ins. Co.*, 274 A.D.2d 346, 711 N.Y.S.2d 15 (1st Dep't 2000)).

Chapter 324, by contrast, codifies a public-protection policy and ensures compensation to a member of the public injured through the operation of a motor vehicle. The "family-owned auto" exclusion in the GEICO policy purports to bar a claim by an unrelated accident victim, a person the statute was designed to protect. Because the "family-owned auto" exclusion serves a purpose plainly contrary to both the statute's plain language and the legislature's public-compensation mandate, the exclusion cannot stand.

GEICO cites no authority supporting the contention that the existence of the Allstate policy relieves GEICO's obligation, and no such authority exists. That Allstate partially covered Fether's injuries does not discharge GEICO's contractual and statutory duty to cover the liability arising from David's use of the Audi.

## CONCLUSION

For these reasons, Chapter 324 voids the "family-owned auto exclusion," and GEICO's failure to pay $100,000 is a breach of contract as a matter of law. *Lawyers*

*Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995) ("Contract interpretation is generally a question of law."). The plaintiff's motion (Doc. 44) for summary judgment is **GRANTED** to the extent that the purported exclusion is found invalid and ineffective. The defendant's motion (Doc. 45) for summary judgment is **DENIED**. The motion (Doc. 34) to dismiss is **DENIED AS MOOT**.

**ORDERED** in Tampa, Florida, on February 5, 2026.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 9 -